IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| KARENLYNN MORALES, | : | |
| Plaintiff, | : | |
| vs. | : | 1:03-CV-185 (WLS) |
| WOODGRAIN MILLWORK, INC., | : | |
| Defendant. | : | |

**ORDER**

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 22). For the following reasons, Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**.

**DISCUSSION**

**I.   BACKGROUND**

Plaintiff brings the above-captioned action against Defendant pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*, and 42 U.S.C. §§ 1981, 1981a(b)(1), alleging she was subjected to employment discrimination by Defendant on the basis of her race and national origin. Plaintiff also raises state law claims of intentional infliction of emotional distress. Further, Plaintiff seeks attorney fees pursuant to 42 U.S.C. § 1988. (Doc. 1). The parties agree that this court properly exercises jurisdiction over the instant matter and is the appropriate venue. (Docs. 1, 3).[1]

**II.   SUMMARY JUDGMENT STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions,

---

[1] The Court noticed the parties that Plaintiff occasionally appears in this Court as a contract interpreter for purposes of providing interpretation in connection with indigent Spanish speaking criminal defendants. Plaintiff is not a court employee. The Court found that it is not disqualified or otherwise required to recuse from presiding in this case. Upon said notice, neither party objected to the Court's qualifications to hear this case. (Doc. 2).

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); *see also* Allen, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See* Cleveland v. Policy Management Sys. Corp., 526 U.S. 795, 804 (1999); Celotex, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id*. at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. Celotex, 477 U.S. at 322-23; Allen, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.     FED. R. CIV. P. 56(e) and LOCAL RULE 56

The Court acknowledges that while an action may understandably begin with broad allegations and assertions of fact, a well pled motion for summary judgment and supporting materials necessarily focus the required response.  As Defendant correctly notes, "when a properly supported Motion for Summary Judgment has been made, [Fed. R. Civ. P. 56(e)] requires that the adverse party set forth specific facts showing that there is a genuine issue for trial.  In that regard, "[c]onclusory allegations without specific supporting facts have no probative value." (Doc. 31 (*citing* Evers v. General Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985)). Likewise, Local Rule 56 *requires* the following from a respondent to a motion for summary judgment:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate. M.D. Ga. R. 56.

Additionally, Local Rule 56 specifically states that "[s]tatements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court."  Local Rule 56. Indeed, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. [citation omitted.] Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." See  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995).

Here, in response to Defendant's Motion for Summary Judgment, to which were attached twenty-three (23) properly numbered *material facts*, Plaintiff submitted three paragraphs containing *conclusory assertions*, none of which controvert particular material facts proffered by Defendant.  (*See* Docs. 23, 29). Plaintiff failed to properly dispute Defendant's' material facts with the specificity required by the Rules.  Most jurisdictions state uncategorically that local rules operate with the force of substantive law.  Link v. Wabash Railroad Co., 291 F.2d 542 (7th Cir.

1961). In addition, some jurisdictions allow the granting of default judgments for failure to properly respond to a motion for summary judgment. In such a jurisdiction, all twenty-three of Defendant's material facts would have been deemed admitted as Plaintiff failed to directly address the same. In fact, this is what this Court's local rule clearly contemplates. If this were to have occurred, Defendants on that basis alone would have won summary judgment on most, if not all of the claims presented by Plaintiff.

Rather than simply being a rule with a punitive effect if violated, Local Rule 56 is intended to instruct the parties on how best to assist the Court in identifying genuine material facts which are in dispute. With regard to granting motions for summary judgment based on a respondent's failure to properly respond, the Eleventh Circuit is more circumspect. The rule in this circuit is that local rules are binding on the parties, but the enforcement of the rule must be tempered with consideration of the circumstances. Cohen v. Carnival Cruise Lines, Inc., 782 F.2d 923 (11th Cir. 1986). A local rule cannot eviscerate a statutory right or conflict with the federal rules. Villano v. City of Boynton Beach, 254 F.3d 1302, 1310-11 (11th Cir. 2001). While not binding on this Court, a Florida district court rejected a magistrate's recommendation to enter a default judgment on a motion for summary judgment simply because the respondent failed to respond to the motion in violation of the local rule. Kinder v. Carson, 127 F.R.D. 543 (S.D. Fla. 1989). Likewise, in the Eleventh Circuit, a district court cannot grant a motion for summary judgment based on default or as a sanction for failure to properly respond. *See* Trustees of Central Pension Fund of International Union of Operating Engineers and Participating Employers v. Wolf Crane Service, Inc., 374 F.3d 1035, 1039 (11th Cir. 2004). Thus, even if the Court were inclined by local rule to accept Defendant's statement of facts as true without examining the record or to grant Defendant's motion because Plaintiff has failed to properly respond, it cannot do so. This Court must make an independent review of the record before deciding Defendant's motion.

It is doubtful, however, that the Eleventh Circuit's less stringent rule is intended to excuse

a party of the responsibility to respond appropriately.  To conclude otherwise would make the adversarial system, especially where both sides are represented by counsel, essentially meaningless.  It is not the Court's responsibility to expend valuable and limited resources and time to scour the record and compose a proper opposing statement of material facts.  It is instead necessary for a responding party to submit a Statement of Material Facts which complies with Local Rule 56.  Failure to adhere to the Local Rule of this Court with respect to responses to properly filed motions for  summary judgment not only causes the Court undue burden, but such failure unnecessarily jeopardizes the survivability of the claims.

**IV.    FACTUAL SUMMARY**

The following facts are undisputed by the parties.  Plaintiff Karenlynn Morales is a Hispanic female.  (*See* Docs. 1, 3, 22, 28).  Plaintiff was born in the United States of America and has maintained American citizenship continuously since birth.  (Doc. 27, p. 41).  Plaintiff was an employee of Defendant Woodgrain Millwork, Inc. from November 27, 2001 to January 28, 2003, upon which date Defendant terminated Plaintiff's employment.  (Docs. 22, 28; *see also* Docs. 1, 3).  From November 27, 2001 to January 8, 2003, Plaintiff was an "administrative assistant" of Defendant.  *Id*.  As a part of reduction in force and elimination of job positions implemented by Defendant in early January 2003, Plaintiff's job duties were restructured on January 9, 2003 to that of a "customer service representative."  (Doc. 24; *see also* Doc. 27, pp. 55-58). Plaintiff served in that capacity until her termination on January 28, 2003.  *Id*.

According to Defendants, Plaintiff was dissatisfied with her job reassignment, the January 9, 2003 employment terminations of her friends, Lisa Blount and Ken Baumann, and the retention of Operations Manager Harry Bailey. (Doc. 24).  Said events, according to Defendants "were the genesis of [Plaintiff's] negative behavior which ultimately resulted in her termination of employment on January 28, 2003."  *Id*.  Defendants contend that Plaintiff continued to express her displeasure with the aforementioned events "to the point that it created an uncomfortable working environment for her co-workers and managers."  *Id*.

Defendants further contend that Plaintiff complained generally that the customer service representative position was not a good fit for her; and that in light of her having recently completed her educational requirements for a Bachelor of Science degree in Industrial Technology, she desired a position in production management. *Id*. Defendants also allege that Plaintiff did not want to work the regular schedule (Monday through Friday) required for customer service representatives, but rather she wanted Friday afternoons off, as Defendant permitted when she was an administrative assistant and pursuing the above mentioned degree. *Id*.

In an alleged effort to modify Plaintiff's alleged behavior, General Manager Greg Clark and Human Resources Manager Judy Toholsky informally counseled Plaintiff on separate occasions between January 9 and January 28, 2003 about the negative effects her alleged behavior was having. *Id*. Nevertheless, according to Defendants, Plaintiff "continued to be defiant and vocally opposed to the decisions that had been made by senior management, as a direct result of which her employment with Woodgrain was terminated on January 28, 2003." *Id*.

Contrastingly, according to Plaintiff, when she was hired on November 27, 2001, Defendant employed 193 persons, of which 15 were Hispanic, many of whom could not speak English. (Doc. 28). Among other job duties she performed for Defendant, Plaintiff served as a Spanish translator. *Id*. Plaintiff allegedly ascertained that many of the Hispanic, non-English speaking employees were in the United States illegally; and informed management for Defendant of the same. *Id*. According to Plaintiff, management for Defendant ignored the information that Plaintiff provided and continued to employ illegal immigrants until the Defendant allegedly experienced difficult economic times, upon which event an "overwhelming number" of Hispanic employees, and all non-English speaking Hispanic employees were terminated. *Id*.

At this point, Plaintiff maintains, Defendant no longer needed her translation skills, and thereafter reassigned her from her administrative assistant position to a customer service representative position. *Id*. At the time of her reassignment, Plaintiff alleges that she was the

only customer service representative involved in the actual development of products. Plaintiff further maintains that she was the only customer service representative who handled large industrial accounts. Plaintiff further alleges that Defendant had recently contracted with a major industrial supplier, Armstrong. As the products produced by Defendant that were offered to Armstrong were allegedly not offered to smaller accounts, Plaintiff maintains that was the only individual handling the customer service aspects of those products. *Id.*

At the time of Plaintiff's termination, Susan Cheney, a white, presumably non-Hispanic female, was a customer service representative of Defendant. (Docs. 24, 28). According to Plaintiff, Susan Cheney handled small accounts, and not larger accounts such as Armstrong, prior to Plaintiff's termination. (Doc. 28). After Plaintiff's termination, Plaintiff contends that Susan Cheney assumed job responsibilities, namely handling larger accounts such as Armstrong, that were previously performed by Plaintiff. *Id.* At the time of her termination, Plaintiff notes that she had recently completed requirements for her college degree. *Id.* The parties agree that Susan Cheney does not possess a college degree. (Docs. 1, 3).

## V.     LEGAL ANALYSIS

### A.     Title VII Claims

In this case, Plaintiff presents no direct evidence of discriminatory intent. Therefore Plaintiff must prove her case by satisfying the inferential test as set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). To establish a prima facie claim of discriminatory discharge or termination,  Plaintiff must show that: "1) she is a member of a protected class; 2) she was qualified for the position held; 3) she was terminated; and 4) she was replaced by a person outside the protected class." Coutu v. Martin County Board of County Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1985) . If Plaintiff establishes a prima facie case, the burden then shifts to Defendants to put forth a legitimate, nondiscriminatory reason for the Defendant's actions. Conner v. Ft. Gordon Bus Co., 761 F.2d 1495, 1499 (11th Cir. 1985).

The Eleventh Circuit in Conner characterized Defendant's burden as "exceedingly light" and "as being merely a burden of production and not a burden of proof." *Id*. "Nevertheless, since [Defendant's] explanation must be clear and reasonably specific, some proffered reasons will be legally insufficient to rebut a prima facie case.  For instance, a defendant relying on a purely subjective reason for discharge will face a heavier burden of production than it otherwise would." *Id*. (*citing* Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 258 (1981); Robbins v. White-Wilson Medical Clinic, Inc., 660 F.2d 1064 (5th Cir. Unit B 1981)).  Upon satisfaction of Defendant's burden, the burden then shifts to Plaintiff to show that the articulated reason was merely a pretext for discrimination.  *See generally* McDonnell, 411 U.S. 792.

Here, it is undisputed that Plaintiff, a Hispanic female was born in the United States of America.  Accordingly, she is not a member of a protected class of "national origin."  It is also undisputed that Plaintiff is Hispanic.  Accordingly, she is a member of a race-based protected class.  It is further undisputed that Plaintiff was qualified for the customer service representative position and that she was terminated from the same.  (*See* Docs. 24, 28).  Thus, the only contested element as to Plaintiff's prima facie case for discriminatory termination is whether Plaintiff was replaced by someone outside the protected class.

It is undisputed that Susan Cheney, a white, presumably non-Hispanic female, was a customer service representative of Defendant at the time of Plaintiff's termination.  (Docs. 24, 28). According to Plaintiff, Susan Cheney handled small accounts, and not larger accounts such as Armstrong, prior to Plaintiff's termination. (Doc. 28).  After Plaintiff's termination, Plaintiff contends that Susan Cheney assumed job responsibilities, namely handling larger accounts such as Armstrong, that were previously performed by Plaintiff, thereby replacing her for purposes of Title VII.  *Id*.   Defendants reject Plaintiff's argument claiming that Plaintiff lacks personal knowledge to testify about events occurring after her termination; and presents no competent, admissible evidence which could support her argument.  (Docs. 24, 31).  Moreover, Defendant contend that Plaintiff's argument necessarily ignores affidavit testimony of Human Resources

Manager Judy Toholsky which states, in relevant part:

> Prior to Ms. Morales's termination of employment on January 28, 2003, Susan Cheney was already employed as a 'Customer Service Representative' at Woodgrain. Susan Cheney did not replace Ms. Morales as a Customer Service Representative of Woodgrain at the time of Ms. Morales's termination from employment. In fact, Ms. Morales was not replaced. Her position as a Customer Service Representative was simply eliminated. The work which was being handled at the time of her termination by Ms. Morales was simply redistributed to the other Customer Service Representatives employed by Woodgrain at that time.

(Doc. 22, Exh. 3; *see also* Doc. 32, p. )

The Court agrees. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Fed. R. Evid. 602. Upon review of the record, the Court finds Plaintiff has not introduced evidence sufficient to support a finding that she has personal knowledge of Susan Cheney's job responsibilities following Plaintiff's termination. Plaintiff's deposition testimony on the matter is therefore inadmissible. Plaintiff submits no other evidence which could support a finding that Defendant replaced Plaintiff with Susan Cheney. Accordingly, Plaintiff fails to meet her burden of establishing a prima facie case of discriminatory termination under Title VII. *See supra generally* McDonnell, Coutu.

As Plaintiff has failed to establish a prima facie case of discriminatory termination under Title VII, as a matter of law the Court must grant summary judgment in favor of Defendants. Accordingly, Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED** as to Plaintiff's Title VII claims.

### B.  Intentional Infliction of Emotional Distress Claim

In her complaint, Plaintiff made a state law claim for intentional infliction of emotional distress. (Doc. 1). Specifically, Plaintiff alleges that "[t]he actions of the individual Defendants in connection with the violation of Plaintiff's rights were willful and/or taken in reckless disregard of Plaintiff's federally protected, and Plaintiff is thus entitled to recover punitive

damages from Defendant for the losses and harm noted above. *Id*. As a matter of law, Georgia law, where a Plaintiff's claim for intentional infliction of emotional distress "directly stems from the termination [of an at-will employee] and is clearly not independent of the severance of employment," the same must fail "because Georgia law does not recognize wrongful discharge of at-will employees." *See, e.g.,* Allen v. Commercial Pest Control, Inc., 78 F. Supp. 2d 1371, 1380 (M.D. Ga. 1999) (citing Mr. B's Oil Co. v. Register, 181 Ga. App. 166 (1986)).

From the facts of this case, it is clear that Plaintiff was an at-will employee of Defendant and that her claim of intentional infliction of emotional distress directly stems from her termination. Therefore, as a matter of law, the Court must grant summary judgment in favor of Defendants.[2] *Id*. Accordingly, Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED** as to Plaintiff's state law claim of intentional infliction of emotional distress.

## VI.  CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment (Doc. 22) is **GRANTED**.

**SO ORDERED**, this   28th   day of March, 2006

                                  /s/W. Louis Sands  
                                  **W. LOUIS SANDS, CHIEF JUDGE**  
                                  **UNITED STATES DISTRICT COURT**

---

[2] The Court notes that in her response to the instant motion for summary judgment, Plaintiff did not contest or otherwise address Defendant's arguments as to her claim for intentional infliction of emotional distress. (*See* Doc. 28).